**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| CHARLOTTE WOMACK, | } | |
| | } | |
| *Plaintiff,* | } | |
| v. | } | Civil Case No. 4:06-cv-3818 |
| | } | |
| FEDEX KINKO'S OFFICE AND PRINT | } | |
| SERVICES, INC., | } | |
| | } | |
| *Defendant*. | } | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Presently before the Court is Defendant's Motion for Summary Judgment (Doc. 14).  Upon review and consideration of this document, the response and reply thereto, and all applicable legal standards, the Court hereby ORDERS that Defendant's Motion for Summary Judgment (Doc. 14) is GRANTED.

I.      <u>Background and Relevant Facts</u>

Plaintiff Charlotte Womack ("Womack") filed suit against Defendant FedEx Kinko's Office and Print Services, Inc. ("FedEx Kinko's") on December 3, 2006, alleging: (1) age discrimination in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.*, (2) sex discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, (3) retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a), and (4) intentional infliction of emotional distress under Texas state law.  Before addressing the merits of these claims, the Court will outline the relevant facts of this case.

Plaintiff began her employment with Kinko's, the predecessor to FedEx Kinko's, in April 2001.  (Pl.'s Dep., Doc. 14 Ex. A at 109).  From April 2001 to February 2002, Plaintiff

worked at Kinko's in The Woodlands as a Customer Services Representative. (Suchy Decl., Doc. 14 Ex. B at ¶ 5).  Subsequently, from February 2002 to February 2003, Womack was a Territory Representative, akin to an outside salesperson, in the Sales organization. (*Id.*). The Sales organization, however, underwent a restructuring in 2003, after which Womack was not selected to remain in her Territory Representative position. (*Id.*). As such, in February 2003, she accepted a position as a Senior Customer Consultant, similar to an inside, center-based sales position, in the Retail organization. (*Id.*). On April 11, 2003, Womack was transferred to the FedEx Kinko's Kingwood location.  (*Id.*).[1]

In April 2003, after Womack was transferred to the Kingwood location, she spoke to her immediate supervisor, Jessica Wardlaw ("Wardlaw"), about the sexual harassment she had allegedly endured in 2002 from Doug Roberson ("Roberson"), a senior Territory Representative in The Woodlands division.  (Pl.'s Dep., Doc. 14 Ex. A at 132).  Wardlaw suggested to Womack that she discuss the matter with Joseph Davison ("Davison"), the Human Resources Generalist. (*Id.*).  Womack took Wardlaw's advice and spoke with Davison that same month.  (*Id.*). According to Davison, Womack reported that Roberson had asked her out on dates, despite the fact that she was married, and that she turned down his invitations.  (Davison Decl., Doc. 14 Ex. D at ¶ 3).  It was Davison's understanding that "Womack had sufficiently resolved the situation herself, and that further action on [his] part was neither desired nor required."  (*Id.*).  He instructed Womack to report back to him if she experienced any further problems with Roberson. (*Id.*).  Davison did not document Womack's report because he believed it was presented to him

---

[1] Plaintiff was transferred from The Woodlands to the Kingwood location "as a result of some interpersonal issues that arose regarding Womack, her supervisor Sheri Frances (who is also Womack's friend), and their co-workers."  (*Id.*).  The Court notes that this transfer was unrelated to Plaintiff's complaint of sexual harassment against Roberson.  (Pl.'s Dep., Doc. 14 Ex. A at 69-70).

after it had already been resolved.  (*Id.*).  Additionally, Womack never reported that she had problems with Roberson from that time forward.  (*Id.*).[2]

In November 2003, Womack met with Lynn Suchy ("Suchy"), the Human Resources director for Womack's region.  (Pl.'s Dep., Doc. 14 Ex. A at 151).  At this meeting, Womack advised Suchy that she had met with Davison to complain about Roberson's conduct. According to Suchy, Womack presented the issue more as a complaint about Davison's lack of action in response to her previous complaint than as a request for action regarding the alleged sexual harassment by Roberson.  (Suchy Decl., Doc. 14 Ex. B at ¶ 6).  Afterward, when Suchy discussed the sexual harassment complaint with Davison, Davison explained that he thought that Womack's complaint had been resolved by the time it was brought to his attention.  (*Id.*).  After this conversation, Suchy and Davison did not discuss Womack's sexual harassment complaint with any other FedEx Kinko's managers or employees until mid-2006 when they were requested to provide information that FedEx Kinko's would use in its response to Womack's EEOC Charge of Discrimination dated February 21, 2006 ("EEOC Charge").  (*Id.*).  The Court notes that, after the November 2003 meeting between Womack and Suchy, Womack never reported any additional problems with Roberson to Suchy.  (*Id.*).

In late 2003 or early 2004, Plaintiff Womack resigned from her position at FedEx Kinko's.  After she resigned, Womack attempted to get re-hired on several occasions.[3] According to Plaintiff's amended EEOC Charge, the dates of these applications are September

---

[2] Wardlaw has declared that she "did not tell anyone employed by FedEx Kinko's about any report by Womack of sexual harassment or complaint about Roberson."  (Wardlaw Decl., Doc. 14 Ex. C at ¶ 3).  Additionally, Davison has declared that he "did not initially advise any other FedEx Kinko's managers or employees about Womack's harassment complaint."  (Davison Decl., Doc. 14 Ex. D at ¶ 3).

[3] Plaintiff also alleges that, in August 2003, while she was still working for Defendant, she scheduled an interview with Steve Gotberg ("Gotberg") for an Account Manager position.  She did not, however, get the position. Instead, Wendi Ryan, a female under the age of forty, was hired for it.  (Pl.'s Aff., Doc. 22 Ex. A at ¶ 5).

14, 2004,[4] December 3, 2004,[5] April 26, 2005,[6] and November 2, 2005.[7]  (Doc. 14 Ex. E(3)).

There is little evidence in the record on the circumstances surrounding Defendant's decision not

to offer Womack the Account Manager position she applied for in August 2003, as well as its

decisions not to re-hire Womack for positions she applied for on September 14, 2004, and

December 3, 2004.[8]  There is, however, evidence regarding Womack's applications for re-hire

on April 26, 2005, and November 2, 2005.

Defendant chose not to re-hire Plaintiff for the Sales Customer Consultant

position she allegedly applied for on April 26, 2005.  Defendant, instead, hired Schnur.  At the

time she applied for this position, Schnur had no prior sales experience, and she had been

working in Conroe as a delivery driver for FedEx Express, the overnight delivery sister company

to FedEx Kinko's.  (Wardlaw Decl., Doc. 14 Ex. G at ¶ 6).  Kent Wardlaw ("Wardlaw"),

manager of the Conroe center for FedEx Kinko's who was conducting interviews for this

position, stated that he "believed Schnur presented a good opportunity to bring in new talent

from a related company who was already familiar with the Conroe market."  (*Id.*).  Additionally,

he noted that "Schnur indicated she would be willing to take a pay cut to $10/hour to join FedEx

Kinko's, which meant her pay would fit into [the] Conroe center's payroll budget."  (*Id.*).

---

[4] Plaintiff applied for a Senior Customer Consultant position with Defendant but did not get the job. Defendant hired Eric Carter, a twenty-three-year-old male, for the position.  (*Id.* at ¶ 10).

[5] Plaintiff applied for an Account Manager position with Defendant but did not get the job.  Defendant hired Andy Thomas, a male under the age of forty, for the position.

[6] Plaintiff applied for a Senior Customer Consultant position with Defendant but did not get the job. Instead, Defendant hired Melanie Paige Schnur ("Schnur"), a thirty-six-year-old female. (Suchy Decl., Doc. 14 Ex. B at ¶ 7).  The Court notes that Plaintiff knew of Defendant's decision not to re-hire her as of April 20, 2005.  (Doc. 14 Ex. E(1)).

[7] Plaintiff applied for a position as an Account Manager with Defendant.  Defendant, however, chose to hire Rob Martin ("Martin"), a male over the age of forty.  (*Id.* at ¶ 8).

[8] The Court notes that Defendant has objected to several statements in Plaintiff's affidavit, which is attached to her response as Exhibit A.  The Court addresses these objections in Part III of this opinion.

Wardlaw, therefore, recommended Schnur for a second interview with Lawnie Shults ("Shults"), the district manager, and told Shults he wanted to hire Schnur for the job.  (*Id.*).  After interviewing Schnur, Shults approved Wardlaw's selection of Schnur for the Sales Customer Consultant position in Conroe.  (*Id.*).  After reviewing Womack's résumé and interviewing her, Wardlaw concluded that Womack did not have sufficient Conroe experience.  (*Id.* at ¶¶ 4, 5).  Furthermore, Womack indicated to Wardlaw that she wanted to earn $14.50 to $15.00 per hour, which would not have fit into the Conroe center's payroll budget.  (*Id.* at ¶ 5).  The Court notes that, at the time they chose not to re-hire Womack, neither Wardlaw nor Shults had any knowledge of her earlier sexual harassment complaint against Roberson.  (*Id.* at ¶ 7) (*see also* Shults Decl., Doc. 14 Ex. H at ¶ 4).

Additionally, Defendant opted against rehiring Womack for the Account Manager position she applied for on November 2, 2005.  Win Shaddinger ("Shaddinger"), an individual involved in the recruiting process for this position, received Womack's résumé from Sheri Francis ("Francis"), Womack's supervisor when she was working at Defendant's location in The Woodlands.  Shaddinger reviewed it and "concluded it did not demonstrate that Womack was qualified for the Account Manager position, [sic] because she lacked the type of business-to-business sales experience with major accounts [he] sought in a candidate."  (Shaddinger Decl., Doc. 14 Ex. I at ¶ 3).  Shaddinger, nevertheless, forwarded Womack's résumé to Antonio Young ("Young"), the recruiter assigned to find candidates for the Account Manager position, and asked him to follow up with Womack as a courtesy.  (*Id.*).  Additionally, Shaddinger followed up with Francis as to why Womack was not retained as a Territory Representative years before, and he concluded that Womack's non-retention in this position "reflected negatively on her qualification as an Account Manager."  (*Id.*).  Young never interviewed Womack because there were three

candidates more qualified than she was in the applicant pool.  (*Id.* at ¶ 4).  He "had concluded that Womack's deficiency was chiefly the kind of experience she had.  [He] was looking for a person with print industry experience in outside sales to major accounts.  Although Womack had print industry sales experience, it was at a lower level than the other candidates, for less time, and not as recent."  (Young Decl., Doc. 14 Ex. F at ¶ 4).  Shaddinger ultimately decided to hire Martin because of his "superior qualifications, which included thirteen years of print industry sales experience in a business-to-business environment."  (*Id.* at ¶ 5).  The Court notes that, at the time Young and Shaddinger decided not to re-hire Womack, neither of them was aware of any protected conduct in which Womack engaged years earlier.  (*Id.* at ¶ 7) (*see also* Shaddinger Decl., Doc. 14 Ex. I at ¶ 6).

Ultimately, Plaintiff Womack filed an EEOC Charge on February 21, 2006, which was later amended on May 10, 2006.  The amended version states, in pertinent part,

> . . . I was rejected for numerous positions I was more than qualified to perform, including, but not limited to applications on 8/22/03, 9/14/04, 12/3/04, 4/26/05, and 11/2/05.  Respondent hired younger and/or male applicants with little or no experience to such job positions.   The company continues to deny me employment opportunities . . . I believe that I have been discriminated against based on my age and sex . . . and retaliated against[.]

(Doc. 14 Ex. E(3)).  Plaintiff's retaliation claim is based solely on her complaint of sexual harassment in 2003.  (Pl.'s Dep., Doc. 14 Ex. A at 125-26).

II.        Legal Standard on Summary Judgment

A party moving for summary judgment must inform the court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R.

Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003).  The substantive law governing the suit identifies the essential elements of the claims at issue and, therefore, indicates which facts are material.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The initial burden falls on the movant to identify areas essential to the nonmovant's claim in which there is an "absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005).  If the moving party fails to meet its initial burden, the motion must be denied, regardless of the adequacy of any response.  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

Once the movant meets its burden, however, the nonmovant must direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial.  *Celotex*, 477 U.S. at 323-24.   The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Indust. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citing *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).  Instead, the non-moving party must produce evidence upon which a jury could reasonably base a verdict in its favor.  *Anderson*, 477 U.S. at 248; *see also DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).   To do so, the nonmovant must "go beyond the pleadings and by [its] own affidavits or by depositions, answers to interrogatories and admissions on file, designate specific facts that show there is a genuine issue for trial." *Webb v. Cardiothoracic Surgery Assoc. of North Texas, P.A.*, 139 F.3d 532, 536 (5th Cir.1998). Unsubstantiated and subjective beliefs and conclusory allegations and opinions of fact are not competent summary judgment evidence.  *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998); *Grimes v. Texas Dept. of Mental Health and Mental Retardation*, 102 F.3d 137, 139-40 (5th Cir. 1996); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994), *cert.*

*denied*, 513 U.S. 871 (1994);  *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992), *cert.*

*denied*, 506 U.S. 825 (1992).  Nor are pleadings summary judgment evidence.  *Wallace v. Tex.*

*Tech Univ.*, 80 F.3d 1042, 1046 (5th Cir. 1996) (citing *Little*, 37 F.3d at1075).  The non-movant

cannot discharge his burden by offering vague allegations and legal conclusions.  *Salas v.*

*Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992); *Lujan v. National Wildlife Fed'n*, 497 U.S. 871,

889 (1990).  Nor is the court required by Rule 56 to sift through the record in search of evidence

to support a party's opposition to summary judgment. *Ragas v. Tennessee Gas Pipeline Co.*, 136

F.3d 455, 458 (5th Cir. 1998) (citing *Skotak v. Tenneco Resins*, Inc., 953 F.2d 909, 915-16 & n.7

(5th Cir. 1992)).

Nevertheless, all reasonable inferences must be drawn in favor of the non-moving

party.  *Matsushita*, 475 U.S. at 587-88; *see also Reaves Brokerage Co. v. Sunbelt Fruit &*

*Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003).  Furthermore, the party opposing a motion for

summary judgment does not need to present additional evidence, but may identify genuine issues

of fact extant in the summary judgment evidence produced by the moving party.  *Isquith v.*

*Middle South Utilities, Inc.*, 847 F.2d 186, 198-200 (5th Cir. 1988).  The non-moving party may

also identify evidentiary documents already in the record that establish specific facts showing the

existence of a genuine issue.  *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167,

178 (5th Cir. 1990).  In reviewing evidence favorable to the party opposing a motion for

summary judgment, a court should be more lenient in allowing evidence that is admissible,

though it may not be in admissible form.  *See Lodge Hall Music, Inc. v. Waco Wrangler Club,*

*Inc.,* 831 F.2d 77, 80 (5th Cir. 1988).

III.          Evidentiary Issues

Before addressing Plaintiff's claims of discrimination and retaliation, the Court will rule on Defendant's objections to the Affidavit of Charlotte Womack, which is attached as Exhibit A to Plaintiff's Response to Defendant's Motion for Summary Judgment (Doc. 22).

Federal Rule of Civil Procedure 56(e) states, in pertinent part,

> A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated. If a paper or part of a paper is referred to in an affidavit, a sworn or certified copy must be attached to or served with the affidavit. The court may permit an affidavit to be supplemented or opposed by depositions, answers to interrogatories, or additional affidavits.

Fed. R. Civ. P. 56(e).   Furthermore, a party cannot manufacture a fact issue simply by contradicting previous sworn testimony without explanation.  *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806-07 (1999) (citing, *inter alia*, *Albertson v. T.J. Stevenson & Co., Inc.*, 749 F.2d 223, 228 (5th Cir. 1984)).  When an affidavit is impeached by prior sworn testimony without sufficient explanation, the court must view that affidavit with profound skepticism.  *See Herrera v. CTS Corp.*, 183 F. Supp. 2d 921, 928 (S.D. Tex. 2002) (citation omitted).  Indeed, it is within the court's discretion to disregard the affidavit altogether should the court determine that it is dealing with a "sham affidavit."  *See Doe v. Dallas Indep. Sch. Dist.*, 220 F.3d 380, 386 (5th Cir. 2000) (noting that the utility of summary judgment would be greatly diminished if courts were unable to screen out "sham issues of fact").  Nevertheless, when an affidavit merely supplements or clarifies rather than contradicts prior sworn testimony, a court may consider the affidavit when evaluating genuine issues in a motion for summary judgment.  *S.W.S Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 496 (5th Cir. 1996) (citation omitted).

Defendant objects to seven different statements in Womack's affidavit and argues that they are inadmissible summary judgment evidence.  The Court will address each objection, in turn.

Defendant's first objection is based on the following statement: "[i]n August 2003 . . . [Gotberg] told me that he had heard the rumors regarding my sexual harassment complaints against Roberson and . . . then told me that he would not promote me to the AM position because of . . . the complaints of harassment I made against Roberson."  (Womack Aff., Doc. 22 Ex. A at ¶ 5).  The Court finds that this statement directly contradicts an earlier sworn statement of Plaintiff.  Specifically, during Plaintiff's deposition, when asked what things Gotberg mentioned during the August 2003 interview, Plaintiff said that she did not recall.  (Pl.'s Dep., Doc. 23 Ex. J at 83-84).  This objection is sustained.

Defendant's next objection is to a statement which reads, "[a]fter Shults came on board, Gotberg, Davison and Wardlaw informed him of the sexual harassment complaints I made against Roberson."  (*Id.* at ¶ 8).  Womack does not state the basis for her personal knowledge of this statement, nor can such personal knowledge be inferred from her affidavit.  Additionally, the Court notes that Womack's deposition testimony confirms that she had no personal knowledge of this statement.  This objection is sustained.

Defendant objects to Womack's statement that "Defendant hired an unqualified truck driver."  (*Id.* at ¶ 12).  This is a conclusory statement that is not based on Womack's personal knowledge.  Womack's deposition testimony confirms that she had no personal knowledge on which to base this statement.  (Pl.'s Dep., Doc. 14 Ex. A at 46).  Defendant's objection is sustained.

Additionally, Defendant objects to the following: "Lynn Suchy, HR Director, informed Kent Wardlaw and Shults that I could not be re-hired due to my previous complaints of sexual harassment." (*Id.*).  Womack does not state the basis for her personal knowledge of this statement, nor can such personal knowledge be inferred from her affidavit.  Defendant's objection is sustained.

Defendant's next objection is to Womack's statement that "Sheri Francis, a manager with Defendant, indicated to me that I was not re-hirable, per Lynn Suchy, due to my previous complaints of sexual harassment against Roberson." (*Id.*).  This statement contradicts earlier sworn testimony of Womack from her deposition, specifically, that she did not recall having communications with Francis about her claims in this case.  (Doc. 23 Ex. J at 204).  Additionally, it is inadmissible as double hearsay under Federal Rule of Evidence 802.  This objection is sustained.

Defendant also objects to the statement that "I was much more qualified than the individuals the Defendant hired in the SCC and AM positions based on the knowledge and experience I obtained during my previous employment with the Defendant . . . Defendant clearly discriminated against me based on my sex and age and retaliated against me when I applied for the SCC and AM positions by rejecting me for hire." (*Id.* at ¶ 13).  The Court finds that Womack does not state the basis for her personal knowledge of this statement, nor can such personal knowledge be inferred from her affidavit.  Additionally, it is a conclusory statement. The Court, therefore, sustains this objection.

Finally, Defendant objects to Womack's statement that "Suchy, Shults, Wardlaw, [Davison] and Gotberg knew that I complained of the sexual harassing conduct of Roberson during my previous employment with the Defendant because I complained directly to most of

them." (*Id.*).  With respect to Shults, Wardlaw, and Gotberg, this statement is not based on the personal knowledge of the affiant.  Suchy and Davison were the only two individuals listed that knew about Womack's complaint of sexual harassment by Roberson.  Defendant's objection is sustained as to Shults, Wardlaw, and Gotberg.

Accordingly, the Court hereby strikes these seven statements from the record.

IV.        Employment Discrimination Claim

Defendant argues that Plaintiff's employment discrimination claim must fail. First, Defendant contends that the events that occurred before April 27, 2005, are not properly before this Court because they are time-barred.  Second, Defendant asserts that Plaintiff cannot establish her non-selection for the Account Manager position was because of her gender or age.

A.        Whether Plaintiff's Claim is Time Barred by the Statute of Limitations[9]

Defendant argues that the events that occurred before April 27, 2005, with respect to Plaintiff's gender and age discrimination claim, are time barred by limitations.  Specifically, Defendant states that its decisions not to re-hire Womack for applications she made on August 22, 2003, September 14, 2004, December 3, 2004, and April 26, 2005, occurred outside of the 300-day period prior to Womack filing her EEOC Charge on February 21, 2006.  Accordingly, Defendant contends that the only event properly before the Court is Defendant's decision not to re-hire Womack for an application she made on November 2, 2005.  Plaintiff, however, asserts that all of these events are properly before the Court under the continuing harm doctrine.

With respect to the timeliness of filing an action, the Fifth Circuit has said, "[a]n individual claiming discrimination in violation of Title VII must file a charge of discrimination

---

[9] "In a state that, like Texas, provides a state or local administrative mechanism to address complaints of employment discrimination, a title VII plaintiff must file a charge of discrimination with the EEOC within 300 days after learning of the conduct alleged."  *Huckabay v. Moore*, 142 F.3d 233, 238 (5th Cir. 1998) (citing 42 U.S.C. § 2000e-5(e)(1); *Messer v. Meno*, 130 F.3d 130, 134 & n. 2 (5th Cir. 1997)).

with the EEOC within 300 days 'after the alleged unlawful employment practice occurred.'" *E.E.O.C. v. WC&M Enterprises, Inc.*, 496 F.3d 393, 398 (quoting 42 U.S.C. § 2000e-5(e)(1))). The filing of a timely EEOC charge is a statutory prerequisite to filing suit. *WC&M Enterprises*, 496 F.3d at 398 (citing *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 109 (2002)).

The Fifth Circuit has consistently held that the continuing violations doctrine, which Plaintiff seeks to invoke here, is "equitable in nature and extends the limitations period on otherwise time barred claims only when the unlawful employment practice manifests itself over time, rather than as a series of discrete acts." *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 279 (5th Cir. 2004) (citing *Frank v. Xerox Corp.,* 347 F.3d 130, 136 (5th Cir. 2003); *Huckabay*, 142 F.3d at 238-39).

Under the continuing violations doctrine, Plaintiff need not show that all of the alleged discriminatory conduct occurred within the actionable period if Plaintiff can show a series of related acts, one or more of which falls within the limitations period. *Pegram*, 361 F.3d at 279 (citing *Felton v. Polles,* 315 F.3d 470, 487 (5th Cir. 2002); *Messer*, 130 F.3d at 135). The goal of this theory is to "accommodate plaintiffs who can show that there has been a pattern or policy of discrimination continuing from outside the limitations period into the statutory limitations period, so that all of the discriminated acts committed as part of this pattern or policy can be considered timely." *Celestine v. Petroleos de Venezuella SA,* 266 F.3d 343, 351-52 (5th Cir. 2001). "Therefore, *Morgan* makes clear that claims based on discrete acts are timely only where such acts occurred within the limitations period, and that claims based on hostile environment are only timely where at least one act occurred during the limitations period." *Pegram*, 361 F.3d at 279-80 (citing *Morgan*, 536 U.S. at 113).

- 13 -

In the instant case, Womack identifies five separate dates on which she applied for positions at FedEx Kinko's. These dates are August 22, 2003, September 14, 2004, December 3, 2004, April 26, 2005, and November 2, 2005. Womack did not file her EEOC complaint until February 21, 2006. Four of the five dates Plaintiff lists fall outside of this 300-day period. The continuing violations doctrine does not apply to save the time-barred claims. Womack has failed to demonstrate a pattern or policy of discrimination by Defendant. Each decision not to re-hire Plaintiff was a separate and independent determination made by different hiring personnel. Thus, only the November 2, 2005, application is properly before the Court.

B.      Plaintiff's Gender and Age Discrimination Claims Fail on the Merits

The Court finds that Plaintiff's claim of discrimination with respect to Defendant's decision not to re-hire her for the position she applied for on November 2, 2005, fails for the reasons discussed below.

1.      Gender Discrimination

It is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

Plaintiff has alleged a gender discrimination claim based on circumstantial evidence. It is, therefore, subject to the *McDonnell Douglas* burden shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 316 (5th Cir. 2004). Under this framework, the initial burden lies with the plaintiff to plead a *prima facie* case of gender discrimination. *Davis*, 383 F.3d at 316. To establish a *prima facie* case of gender discrimination, the plaintiff must show the following: (1)

she was a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) she was replaced by someone outside the protected class, or similarly-situated employees outside the protected class were more favorably treated.  *See Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512-13 (5th Cir. 2001); *Bauer v. Albemarle Corp.*, 169 F.3d 962, 966 (5th Cir.1999).

If the plaintiff establishes a *prima facie* case of discrimination, a presumption of discrimination arises, and the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for its employment action.  *See Price v. Federal Express Corp.*, 283 F.3d 715, 720 (5th Cir. 2002).  Superior's burden is satisfied if it produces evidence that "*taken as true*, would *permit* the conclusion that there was a nondiscriminatory reason for the adverse action."  *Id.* (citing *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 509 (1993)) (emphasis in original).

If the defendant articulates a reason that can support a finding that its actions were nondiscriminatory, "the mandatory inference of discrimination created by the plaintiff's prima facie case drops out."  *Id.* (citing *Hicks*, 509 U.S. at 510-511).  The plaintiff must then introduce evidence creating a jury question as to whether the defendant was motivated by discriminatory animus.  The plaintiff meets this burden by showing either that (1) defendant's articulated reason was pretextual (pretext alternative), or (2) plaintiff's protected characteristic was a motivating factor in the decision (mixed motives alternative).  *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004).

Although the intermediate evidentiary burdens shift back and forth, the "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff always remains with the plaintiff."  *Reeves v. Sanderson Plumbing Prods.*, 530 U.S.

133, 143 (2000) (quoting *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).  In determining whether summary judgment is appropriate, the court considers the strength of the plaintiff's *prima facie* case, the probative value of proof that the employer's explanation is false, and any other evidence that supports the employer's case and that may properly be considered for summary judgment.  *Id.* at 148-49.

### 2.     Age Discrimination

The Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.*, (the "ADEA") provides that "[i]t shall be unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).

"In essence, the ADEA makes it unlawful for an employee, who is at least forty years old, to be discharged or otherwise subjected to an adverse employment action because of his or her age." *Eugene v. Rumsfeld*, 168 F. Supp. 2d 655, 665 (S.D. Tex. 2001) (citing *Rutland v. Moore*, 54 F.3d 226, 228 (5th Cir. 1995) (citing 29 U.S.C. §§ 623(a), 631(a))).  "Congress expressly declared that the purposes of the ADEA were 'to promote employment of older persons based on their ability rather than age; to prohibit arbitrary age discrimination in employment; [and] to help employers and workers find ways of meeting problems arising from the impact of age on employment.'"  *Id.* at 665 (quoting *Wamsley v. Champlin Ref. & Chems., Inc.*, 11 F.3d 534, 541 (5th Cir. 1993), *cert. denied*, 514 U.S. 1037 (1995) (quoting 29 U.S.C. § 621(b))).  "When a plaintiff alleges disparate treatment, 'liability depends on whether the protected trait (under the ADEA, age) actually motivated the employer's decision.'" *Reeves*, 530 U.S. at 141 (quoting *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993)).  "That is, the

plaintiff's age must have 'actually played a role in [the employer's decisionmaking] process and had a determinative influence on the outcome.'" *Reeves*, 530 U.S. at 141 (quoting *Hazen Paper Co.*, 507 U.S. at 610).

When a plaintiff produces only circumstantial evidence of age discrimination, the burden-shifting analysis set forth in *McDonnell Douglas* guides the Court's inquiry. *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 894 (5th Cir. 2002). The Fifth Circuit applies the *McDonnell Douglas* framework to both Title VII and ADEA claims. *Id.* at 896 n. 2 (citing *Russell v. McKinney Hospital Venture*, 235 F.3d 219, 222 n. 3 (5th Cir. 2000)).

C.    Combined Analysis of Plaintiff's Gender and Age Discrimination Claims

The Court will assume that Plaintiff has established a *prima facie* case of gender and age discrimination under the *McDonnell Douglas* rubric. Thus, the Court now looks to Defendant for a legitimate, non-discriminatory reason for its decision not to hire Womack as an Account Manager.

Three individuals were involved in the hiring process for this position, Young, Shaddinger, and Jennifer Jones ("Jones"). After reviewing Womack's résumé, Shaddinger "concluded . . . that Womack . . . lacked the type of business-to-business sales experience with major accounts [he] sought in a candidate." (Shaddinger Decl., Doc. 14 Ex. I at ¶ 3). Young "concluded that Womack's deficiency was chiefly the kind of experience she had. [He] was looking for a person with print industry experience in outside sales to major accounts. Although Womack had print industry sales experience, it was at a lower level than the other candidates, for less time, and not as recent." (Young Decl., Doc. 14 Ex. F at ¶ 4). Ultimately, Shaddinger and Jones decided to hire Martin, a male over the age of forty, because of his "superior qualifications, which included thirteen years of print industry sales experience in a business-to-

business environment." (Shaddinger Decl., Doc. 14 Ex. I at ¶ 5).  The Court, therefore, finds that Defendant has satisfied its burden of demonstrating legitimate, non-discriminatory reasons for not hiring Womack.

Womack has failed to provide sufficient evidence that Defendant's legitimate, non-discriminatory reasons for not hiring her were a mere pretext for sex or age discrimination. During her deposition, Womack admitted that no one said or did anything to her to indicate that she was not hired as an Account Manager because of her gender or age.  (Pl.'s Dep., Doc. 14 Ex. A at 32-33).  The Fifth Circuit has held that a plaintiff's conclusory statements and subjective beliefs cannot establish pretext.  *Hornsby v. Conoco, Inc.*, 777 F.2d 243 (5th Cir. 1985) (employee's subjective belief she was terminated because of her age and sex could not be basis for judicial relief where adequate nondiscriminatory reason for discharge presented). Accordingly, the Court finds that Plaintiff has failed to establish pretext, and, as such, her gender and age discrimination claims must fail.

V.          Retaliation Claim

In its motion, Defendant FedEx Kinko's argues that Plaintiff Womack cannot establish that her non-selection for the Account Manager position she applied for on November 2, 2005, was because of retaliation.  Defendant contends that Plaintiff has failed to establish a *prima facie* case of retaliation as she has failed to prove the element of causation.  Additionally, Defendant argues that, even if Womack made out a *prima facie* case of retaliation, Defendant has articulated a legitimate, non-retaliatory reason for its decision.  Plaintiff asserts that there is a clear causal connection.  The Court, after considering the parties' respective arguments and the relevant legal authority, finds that Plaintiff's retaliation claim must fail as a matter of law.

Assuming Plaintiff has exhausted her administrative remedies, she may prove a claim of retaliation by either direct or circumstantial evidence. *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007). To establish a *prima facie* case of retaliation, Plaintiff must establish that: (1) she participated in an activity protected by Title VII; (2) her employer took an adverse employment action against her; and (3) there is a causal connection between the protected activity and the adverse employment action. *McCoy*, 492 F.3d at 556-57 (citing *Banks v. E. Baton Rouge Parish Sch. Bd.*, 320 F.3d 570 (5th Cir. 2003)). "Under Title VII, an employee has engaged in protected activity if she has 'opposed any practice made an unlawful employment practice under [42 U.S.C. § 2000e-3(a)].'" *Turner*, 476 F.3d at 348 (quoting 42 U.S.C. § 2000e-3(a)). To satisfy this opposition requirement, Plaintiff only needs to show that she had a "reasonable belief that the employer was engaged in unlawful employment practices." *Turner*, 476 F.3d at 348 (quoting *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 428 (5th Cir. 2000)). Additionally, the Fifth Circuit has held that "[t]he proper standard of proof on the causation element of a Title VII retaliation claim is that the adverse employment action taken against the plaintiff would not have occurred 'but for' her protected conduct." *Septimus v. Univ. of Houston*, 399 F.3d 601, 608 (5th Cir. 2005) (citing *Pineda v. United Parcel Service, Inc.*, 360 F.3d 483, 487 (5th Cir. 2004)). The Fifth Circuit recently reaffirmed this standard in *Strong v. Univ. HealthCare System, LLC*, 482 F.3d 802, 806 (5th Cir. 2007).

If Plaintiff makes a *prima facie* showing of retaliation, "the burden then shifts to the employer to articulate a legitimate, nondiscriminatory or nonretaliatory reason for its employment action." *McCoy*, 492 F.3d at 557 (citing *Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002)). If the employer meets its burden, the burden then shifts back to Plaintiff who must prove that the employer's proffered reason is a pretext for the real retaliatory purpose. *Id.* To

carry this burden, Plaintiff must rebut each nonretaliatory reason articulated by the employer. *Id.* (citing *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003)).

"Close timing between an employee's protected activity and an adverse action against him may provide the 'causal connection' required to make out a *prima facie* case of retaliation." *Swanson v. General Services Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997) (citing *Armstrong v. City of Dallas,* 997 F.2d 62, 67 (5th Cir. 1993)). "However, once the employer offers a legitimate, nondiscriminatory reason that explains both the adverse action and the timing, the plaintiff must offer some evidence from which the jury may infer that retaliation was the real motive." *Swanson*, 110 F.3d at 1188.

In addressing Plaintiff's retaliation claim, the Court will assume that Womack participated in an activity protected by Title VII by making a complaint of harassment to Davison in April 2003 and that her employer took an adverse employment action against her in deciding not to re-hire her for the Account Manager position she applied for on November 2, 2005. The Court finds, however, that Womack has failed to raise a fact question as to the element of causation.

First, there was a significant lapse of time between Plaintiff's harassment complaint to Davison in April 2003 and the adverse employment action she suffered in November 2005. As the Supreme Court has stated, "[t]he cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'" *Clark County School Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001) (citations omitted). In that case, the Supreme Court found that action taken twenty months later suggests, by itself, no causality at all. Furthermore, the Fifth Circuit has

affirmatively rejected "the notion that temporal proximity standing alone can be sufficient proof of but for causation.  Such a rule would unnecessarily tie the hands of employers."  *Strong v. University Healthcare System, L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007).  Second, the evidence fails to show that the hiring personnel at FedEx Kinko's had any knowledge of Womack's protected conduct in 2003 at the time they decided not to hire her for the Account Manager position.  Finally, the evidence does not support Womack's contention that her history with FedEx Kinko's creates a genuine issue of material fact as to causation.  Accordingly, the Court finds that Plaintiff has failed to state a *prima facie* case of retaliation.

Even if Womack had established a *prima facie* case of retaliation, she has failed to rebut Defendant's legitimate and nondiscriminatory reasons for its actions.  FedEx Kinko's advised Womack of its decision not to re-hire her in November 2005, approximately nineteen months after she complained to Davison of sexual harassment.   Assuming that the hiring personnel at FedEx Kinko's knew of Womack's complaint to Davison and that there was, in fact, a causal connection between the protected activity and adverse action, Defendant has offered a legitimate, nondiscriminatory explanation for deciding not to re-hire Womack.  "For the Account Manager position, Antonio Young and Win Shaddinger did not believe Womack had the necessary experience qualifications for the job, especially in comparison to the superior experience qualifications possessed by the other candidates, including the successful candidate, Rob Martin."  (Doc. 14 at 16).  There is no evidence to the contrary.  Therefore, the Court finds that Plaintiff has failed to prove pretext.  Plaintiff's retaliation claim fails as a matter of law.

VI.        Intentional Infliction of Emotional Distress Claim

Plaintiff Womack has also asserted a claim for intentional infliction of emotional distress under Texas state law based on her "applications for employment with FedEx Kinko's

and her claim that she was denied employment because of her sex, her age and/or retaliation for her previously made complaint of sexual harassment related to Doug Roberson." (Doc. 14 Ex. A at 125-26).

In *Standard Fruit and Vegetable Co. v. Johnson*, 985 S.W.2d 62, 68 (Tex. 1998), the Texas Supreme Court recognized the intentional infliction of emotional distress as a "gap-filler" tort that was "judicially created for the limited purpose of allowing recovery in those rare instances in which a defendant intentionally inflicts severe emotional distress in a manner so unusual that the victim has no other recognized theory of redress." *Hoffman-LaRoche, Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (citing *Standard Fruit*, 985 S.W. 2d at 68). "Intentional infliction of emotional distress is a 'gap-filler' tort never intended to supplant or duplicate existing statutory or common-law remedies." *Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 816 (Tex. 2005). Accordingly, the Court finds that Womack may not assert an intentional infliction of emotional distress claim as it is based on the same underlying conduct as her Title VII claims.

VII.        Conclusion

Accordingly, the Court hereby ORDERS that Defendant's Motion for Summary Judgment (Doc. 14) is GRANTED.

SIGNED at Houston, Texas, this 26th day of September, 2008.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE